UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HYPER MICROSYSTEMS INCORPORATED, | ) ) ) Case No. 20-cv-05500 ) ) Judge Sharon Johnson Coleman ) ) ) ) |
| Plaintiff, | |
| v. | |
| LEGACY MICRO, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hyper Microsystems Incorporated ("Microsystems") brings this lawsuit against Defendant Legacy Micro, Inc. ("Legacy") to enforce the terms of a written note entered into between the two parties in connection with Legacy's purchase of certain assets from Microsystems. Microsystems alleges that Legacy has breached the terms of the note by failing to make all payments due and claims that Microsystems is entitled to collect the full outstanding principal balance of the note in the amount of $207,491.89, plus accrued interest, as well as its costs of collection, including attorneys' fees. (Dkt. 1.) Microsystems moves for summary judgment on its breach of contract claim. (Dkt. 20.) For the reasons below, the Court grants Microsystems's motion and enters summary judgment against Legacy for breach of contract.

**BACKGROUND**

Because this case is before the Court on summary judgment, the factual record is framed largely by Microsystems's Local Rule 56.1 statement of facts and Legacy's response to that statement of facts, (Dkts. 22, 28), although the Court retains discretion to "consider other materials in the record" where appropriate. Fed. R. Civ. P. 56(c)(3). Unless otherwise stated, the facts below are undisputed.

1

### A. The Parties and the Goodwill Note

Microsystems is an Illinois corporation with its principal place of business in Rolling Meadows, Illinois. (Dkt. 28 ¶ 1.) Legacy is a Florida corporation with its principal place of business in Hollywood, Florida. (*Id.* ¶ 2.)

In June 2017, Legacy and Microsystems reached an agreement for Legacy to purchase substantially all the tangible and intangible assets of "LegendMicro.com" ("Legend Micro") from Microsystems. (Dkt. 28 ¶ 5.) Part of the consideration for Legacy's purchase of Legend Micro's assets was a payment evidenced by a secured promissory note (the "Goodwill Note"). (Dkt. 28 ¶¶ 6–7; Dkt. 22-2.) Under the Goodwill Note, Legacy promised to pay Microsystems the principal sum of $484,903.58, with interest accruing at a rate of 2% per annum. (Dkt. 28 ¶ 7; Dkt. 22-2 at 2.) The Goodwill Note provides that the payments will be due "in 36 equal installments of $13,888.89 due on the first of each month, with the first payment coming due on August 1, 2017." (*Id.*)

Additionally, Legacy and Microsystems entered into a second promissory note as part of the same transaction in June 2017 for Legacy to pay for its purchase of Legend Micro assets (the "Inventory Note"). (Dkt. 28 ¶¶ 38, 41; Dkt. 22-1 at 7.)[1] Under this separate Inventory Note, Legacy agreed to pay the principal sum of $255,188.08, with interest, in an initial lump sum of $100,000 followed by a period of monthly installments. (*Id.*)

The instant lawsuit centers primarily around the terms of the Goodwill Note that apply in the event of a default, *i.e.*, Legacy's failure to make a required payment. The Goodwill Note defines an "event of default" to include "(a) the failure by [Legacy] to pay (i) an installment of principal or interest payable pursuant to this Note within five (5) days after the date when due, or (ii) any other amount

---

[1] Microsystems attaches an unsigned version of this agreement as an exhibit to its statement of facts. (Dkt. 22-1 at 7.) Legacy does not dispute that the parties entered into this agreement or question its validity, so the Court deems it admitted that the agreement is a valid and binding contract. *See* N.D. Ill. L.R 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material.").

2

payable to [Microsystems] under this Note or the security agreement . . . as of the date hereof, by and among [Legacy] and [Microsystems], within five (5) days after the date when any such payment is due in accordance with the terms thereof…" (Dkt. 28 ¶ 9.) Upon such an event of default, the Goodwill Note provides that "the principal balance remaining unpaid under this Note, and all unpaid interest accrued thereon and any other amounts due hereunder, shall be and become immediately due and payable in full." (*Id.* ¶ 10.) The Goodwill Note further provides that Microsystems's failure to exercise its option for immediate payment "shall not constitute a waiver of the right to exercise [the] same in the event of any subsequent Event of Default," and also states that Microsystems shall not, "by any act of omission or commission, be deemed to waive any of its rights, remedies or powers hereunder or otherwise unless such waiver is in writing and signed by the holder hereof . . ." (*Id.* ¶ 11.)

Also relevant here is that the Goodwill Note states that "[i]f any suit or action is instituted, or attorneys are employed to collect this Note or any part hereof, [Legacy] promises and agrees to pay all costs of collection, including reasonable attorneys' fees and court costs." (*Id.* ¶ 12.) Finally, the Goodwill Note contains a provision stating that Legacy agreed to waive any defenses, other than Microsystems's failure to act in a commercially reasonable manner, in any action to enforce the Goodwill Note's terms, including claims of offset. (*Id.* ¶ 13.)

### B. Legacy's Failure to Make Payments and the Alleged Oral Modification of the Goodwill Note

Eventually, Legacy stopped making its required regular payments under the Goodwill Note, though it did make a series of smaller payments. (*Id.* ¶ 18.) Once this instant lawsuit was initiated, Legacy ceased making any payments under the Goodwill Note altogether. (*Id.* ¶ 19.) Microsystems applied the payments it received from Legacy after November 2018—after it stopped making full payments—first to the unpaid interest, and thereafter to the unpaid principal balance as provided by the terms of the Goodwill Note. (*Id.* ¶ 20.)

Based on Legacy's failure to make complete payments after November 2018, Microsystems

filed a two-count complaint against Legacy asserting a claim for breach of contract (Count I), and an alternative claim for quantum meruit (Count II). (Dkt. 1.)

As Microsystems notes in its statement of facts, Legacy has asserted several affirmative defenses to Microsystems's claim for breach of contract. First, Legacy argues that Microsystems and Legacy entered into an oral modification of the Goodwill note in September 2019, wherein Legacy would make partial payments on the Goodwill Note in consideration for not being defaulted. (*Id.* ¶ 21; Dkt. 12 at 3–4.). Legacy claims that Microsystems's CEO Gregory Yurovsky and Legacy's CEO Michael Dvorkin spoke on the phone in around August or September 2019. (*Id.* ¶ 25.) According to Dvorkin, Yurovsky stated that he understood that Legacy was experiencing financial difficulties at the time, and he asked that Legacy just make payments on the Goodwill Note when it could. (*Id.*; Dkt. 22-3, Dvorkin Dep. Trans. at 29:19–30:21.) Dvorkin testified that Yurovsky's statement prompted Legacy to start making $1,000 monthly payments on the outstanding balance of the Goodwill Note. (*Id.*) In its statement of facts, Microsystems goes on to assert that, while Yurovsky purportedly agreed to accept smaller payments on this call, he did not ask for anything in exchange for accepting smaller payments or agree to change any terms of the Goodwill Note. (*Id.* ¶ 26.) Legacy partially disputes this fact regarding whether any other terms of the Goodwill Note were changed, because Dvorkin testified that he did not remember if Yurovsky agreed to change any other terms. (*Id.*; Dkt 22-3, Dvorkin Dep. at 31:21–32:6.)

Sometime after their phone call, in or around January 2020, Yurovsky and Dvorkin met in-person at the Ritz Carlton in Key Biscayne, Florida. (Dkt. 28 ¶ 23; Dkt. 22-3, Dvorkin Dep. at 32:23–33:2.) But the parties ultimately did not arrive at a different schedule of payments or engage in any further discussions of when payments were to be made. (*Id.* ¶ 28.)

Legacy continued making a series of reduced payments until September 2020. (*Id.* ¶ 18; Dkt. 22-3, Ex. A to Dvorkin Dep.) In September 2020, Legacy claims that Yurovsky again approached

4

Dvorkin about further modifications to the Goodwill Note, specifically, that the parties discuss entering into a modified payment schedule. (Dkt. 28 ¶ 29; Dkt. 22-3, Dvorkin Dep. at 36:13–17.) According to Dvorkin, Yurovsky proposed that the parties have their attorneys work out terms for such a modification, but counsel for Legacy and Microsystems could not come to an agreement. (Dkt. 28 ¶ 30.) Dvorkin testified that Microsystems's attorneys insisted the agreement include a provision requiring a personal guaranty from Dvorkin, but he would not agree because Yurovsky had purportedly previously advised him against signing any such guaranty. (*Id.* ¶ 31.)

In addition to its affirmative defense of the oral modification of contract, Legacy asserts that Microsystems's failure to comply with the oral modification to the Goodwill Note represents a failure to mitigate its damages, because had Microsystems followed the "verbal agreement" between Dvorkin and Yurovsky, Microsystems would have continued receiving payments from Legacy on a regular basis. (*Id.* ¶ 35; Dkt. 12 at 5.) Additionally, Legacy asserts the affirmative defense of "unclean hands," based on Microsystems's alleged decision to unilaterally revoke the oral modification to the Goodwill Note and claim default after Dvorkin refused to enter into a personal guarantee. (Dkt. 28 ¶ 32; Dkt. 12 at 4.)

### C. Legacy's Claim of Overpayment under the Inventory Note

Apart from its defenses regarding the alleged modifications to the Goodwill Note, Legacy additionally maintains that it made an overpayment which reduces the amount of the unpaid balance on the Goodwill Note. (Dkt. 28 ¶ 36; Dkt. 22-3 at 35.) In April 2021, after this lawsuit was initiated, Legacy calculated that it had made an overpayment of $20,851.08, which it subtracted from the total amount due on the Goodwill Note. (Dkt. 28 ¶ 36.) Legacy claims this amount arises from a mistaken overpayment it made on the separate Inventory Note. (*Id.* ¶ 39.) Specifically, Legacy calculated the payment by taking the total amount it paid on the Inventory Note, $276,039.16, and subtracting the principal sum of the Inventory Note of $255,188.08. (*Id.* ¶ 40.) The parties dispute whether Legacy's

5

calculation accounts for the interest that would have accrued on the Inventory Note before it was paid off, with Microsystems claiming Legacy's claimed amount of overpayment does not account for interest, while Legacy maintains the overpayment existed "despite the interest." (*Id.* ¶ 43.)

**STANDARD OF REVIEW**

Summary judgment is proper when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017), reh'g denied (Mar. 27, 2017) (quoting *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). In deciding whether summary judgment is appropriate, this Court accepts the nonmoving party's evidence as true and draws all reasonable inferences in that party's favor. *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If there is a genuine issue of material fact as to any party, the Court must deny summary judgment.

**DISCUSSION**

Microsystems has moved for summary judgment on its breach of contract claim, arguing that it is entitled to judgment as a matter of law because (1) the terms of the Goodwill Note at issue are undisputed, (2) there is no dispute of fact that the note remains unpaid, and (3) the defenses asserted by Legacy are factually insufficient and unsupportable as a matter of law. (Dkt. 20 at 1.)

To state a claim for breach of contract in Illinois, a plaintiff must prove "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022). The issues here are damages and Legacy's affirmative defenses.

Legacy asserts the affirmative defense that Yurovsky and Dvorkin entered into an oral modification of the Goodwill Note, wherein Microsystems agreed to accept partial payments on the note in exchange for not finding Legacy in default under the agreement. Legacy additionally asserts that Microsystems's conduct gives rise to the defense of "unclean hands," and that Microsystems failed to mitigate its damages. Finally, on damages, Legacy suggests that any damages owed for its alleged breach of the Goodwill Note must be reduced by its overpayment on the Inventory Note. The Court will address each of these issues in turn.

**A. There Was No Enforceable Oral Modification of the Goodwill Note**

Microsystems argues any alleged oral modification of the Goodwill Note is unenforceable as: (1) the Illinois Credit Agreements Act ("ICAA") bars any claims or defenses based upon an agreement to modify a debt instrument unless the agreement is in writing; and (2) any alleged modification is nonbinding because it was not for a definite period and was not supported by consideration. (Dkt. 21 6–8.) In response, Legacy argues that the ICAA is inapplicable to the agreement at issue, and further maintains there is at least a triable issue of fact as to whether the parties entered into an oral modification of their agreement, and whether Legacy breached those modified terms. (Dkt. 27 at 3–6.)

Section 2 of the ICAA states that "[a] debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing," 815 ILCS 160/2. Further, the alleged "agreement by a creditor to modify or amend an existing credit agreement" cannot be used by a debtor as a defense in an action to enforce the agreement, unless the modification or amendment complies with the writing requirement of Section 2. *See* 815 ILCS 160/3. The ICAA defines "creditor" as a person or entity "engaged in the business of lending money or extending credit." 815 ILCS 160/1.

Microsystems argues the ICAA applies generally to commercial indebtedness, including

7

agreements such as the Goodwill Note, and thus maintains that any alleged oral modification of the Goodwill Note is unenforceable because it was not in writing as required under the ICAA. (Dkt. 21 at 6; Dkt. 30 at 2–3.) However, in the absence of any factual support or argument suggesting that Microsystems was "engaged in the business" of lending money or extending credit, the Court cannot hold, as a matter of law, that Microsystems is a creditor, which would be a prerequisite to any finding that the Goodwill Note is a "credit agreement" subject to the writing requirements of the ICAA.

Microsystems further argues that any alleged oral agreement between Yurovsky and Dvorkin is unenforceable under Illinois law, because the agreement was not sufficiently definite and was not supported by consideration. (Dkt. 21 at 6–7.) Microsystems also asserts that it is undisputed that it did not change any of the other terms of the Goodwill Note and did not ask for anything in return for the alleged agreement to accept reduced payments. Any modification, therefore, "resulted in no benefit to Microsystems beyond the payment already owed." (*Id.* at 7.) Microsystems further notes that the alleged agreement was not for any definite period of time. (*Id.*)

Legacy maintains that the record evidence creates at least a question of fact as to whether the parties entered into an enforceable oral agreement. (Dkt. 27 at 3–5.) Legacy argues that it is undisputed that Yurovsky orally agreed over the phone to accept smaller payments from Legacy, and that the agreement is evidenced by the fact that Legacy in fact started to make $1,000 payments, much less than the $13,888.89 required under the agreement. (*Id.* at 4.) Legacy further notes that Dvorkin and Yurovsky met in person in January 2020 at which time Yurovsky requested that Legacy increase its payments, and that after this meeting Legacy did increase its payments to $2,000 and then $3,000 a month, until Microsystems initiated this litigation in September 2020. (*Id.*) Legacy points to its reduced payments, and the lack of any objection by Microsystems, as sufficient to demonstrate there was an oral agreement to modify the Goodwill Note and that the parties were acting as if there such

an agreement. (*Id.* at 5.)

The Court disagrees with Legacy's contention. First, the Court finds that the alleged agreement is not sufficiently definite and certain. It is undisputed that, in or around September 2019, Yurovsky orally agreed to accept lower payments from Legacy, and that Legacy did in fact make smaller payments without any objection from Microsystems. But Legacy has pointed to no evidence establishing any "definite and certain" terms of this alleged oral agreement. At most, the purported "oral agreement" appears to have simply involved Yurovsky asking Dvorkin that Legacy make payments when it could, and agreeing to accept such smaller payments, which in turn prompted Legacy to begin making payments of $1,000 each month. (Dkt. 28 ¶ 25); *see also* (Dkt. 22-3, Dvorkin Dep. at 30:14–21.) The Court finds that this arrangement that Legacy make smaller payments "when it can" and/or for "whatever [it] can" does not have sufficiently definite or certain terms to constitute an enforceable oral modification to a written contract. *See Neuman v. Superior Jamestown Corp.*, No. 02 CV 7399, 2003 WL 1877635, at \*5 (N.D. Ill. Apr. 11, 2003) (Darrah, J.) (finding an alleged oral contract unenforceable as a matter of law where the alleged oral argument used terms that had "no certain or definite meaning").

The Court is also not persuaded by Legacy's argument that the evidence that it increased its monthly payments at Microsystems's request supports a conclusion that there was a valid modification of their contract. Quite the opposite. The fact that Legacy subsequently increased its payments after Yurovsky's simple oral request that Legacy pay more actually undercuts any suggestion that the parties previously formed any definite and certain agreement for Legacy to pay off the Goodwill Note. In short, the oral agreement for Legacy to pay what it can, when it can, is not sufficiently definite or certain to constitute a binding oral modification of the Goodwill Note.

Second, the purported oral modification of the Goodwill Note fails because it was not supported by consideration. *See Flexicorps, Inc. v. Trend Techs., Inc.*, No. 01 C 1754, 2002 WL 31018353,

at *4 (N.D. Ill. Sept. 10, 2002) (Kenelly, J.) ("[A] modification to an existing contract requires consideration to be legally enforceable.") (citations omitted). Consideration is a bargained-for exchange "whereby the promisor receives some benefit or the promisee suffers detriment." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 739 (N.D. Ill. May 23, 2011) (Castillo, J.). "[A] promise to do something one is already obligated to do is no consideration and creates no new obligation." *Doe v. McHenry Cnty. Coll.*, No. 17 CV 4247, 2020 WL 5209834, at *5 (N.D. Ill. Sept. 1, 2020) (Rowland, J.) (quoting *Moehling v. W. E. O'Neil Constr. Co.*, 20 Ill. 2d 255, 266, 170 N.E.2d 100, 106 (1960).

The alleged oral agreement here by Microsystems's CEO to modify the Goodwill Note was not supported by any consideration. There is no indication that either party took on a new obligation, detriment, or promise. Instead, Legacy merely continued to make payments it was already responsible for, albeit at a lower rate, and Microsystems agreed not to pursue default. The "agreement" was solely for the benefit of Legacy and there was thus no consideration.

In sum, there is no genuine dispute of fact that Legacy and Microsystems did not enter into a valid and enforceable oral modification of the Goodwill Note. Legacy's affirmative defense that the Goodwill Note was modified fails.

**B. Legacy's Defense of Unclean Hands**

Legacy argues that there are sufficient facts supporting its defense of unclean hands. Legacy argues that Microsystems's conduct of agreeing to accept lower payments, and in fact continuing to accept lower payments, only to go back on that oral agreement and file suit against Legacy is the "very definition of unclean hands and raises material questions about whether the Defendant can recover in this matter." (Dkt. 27 at 5–6.) Legacy further suggests that, when the parties' attorneys were discussing a potential written modification of the Goodwill Note, it was improper for Microsystems to require Dvorkin to enter into a personal guaranty to "keep the already agreed upon modification in place." (*Id.* at 5.) Microsystems responds that it was not required to settle or surrender its rights under

10

the Goodwill Note, and its refusal to extend payment deadlines and to instead enforce the terms of the Goodwill Note does not qualify as the "inequitable conduct" needed to establish unclean hands. (Dkt. 21 at 8; Dkt. 30 at 4–5.)

Microsystems is correct that Legacy's unclean hands defense fails as a matter of law, though not for the reasons that Microsystems argues. Under Illinois law, "[t]he unclean hands doctrine bars only *equitable* remedies and does not affect legal rights." *Zahl v. Krupp*, 850 N.E.2d 304, 310 (Ill. App. Ct. 2006) (emphasis added). The defense of unclean hands is therefore unavailable when a complaint seeks only legal relief, *i.e.*, money damages. *See W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 928 F. Supp. 2d 976, 987 (N.D. Ill. 2013) (Leinenweber, J.) (finding unclean hands defense failed as a matter of law because "[t]he defense of unclean hands is also an equitable defense, not applicable to a claim for money damages for a breach of contract.").

Microsystems's complaint for breach of contract seeks only legal relief in the form of money damages, specifically the principal balance of the Goodwill Note, any accrued interest, and its costs of collection. Legacy's affirmative defense of unclean hands is therefore inapplicable and, as a matter of law, cannot defeat Microsystems's motion for summary judgment.

## C. Failure to Mitigate Damages

In addition to the affirmative defense of "unclean hands," Legacy's answer to the complaint also asserts the affirmative defense that Microsystems failed to mitigate its damages because it refused to follow the alleged oral modification of the Goodwill Note. (Dkt. 12 at 4–5.) In its opening brief, Microsystems argues that this defense fails because it was not required to settle or surrender its rights under the Goodwill Note to mitigate its damages. (Dkt. 21 at 8–9.)

Legacy fails to address Microsystems's argument and does not raise the issue of its affirmative defense of failure to mitigate in its response brief at all, and therefore waives this issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in

11

waiver."). At the summary judgment stage, Legacy must "create a genuine issue of material fact that [plaintiff] failed to mitigate," that is, that Microsystems "failed to exercise reasonable effort" to reduce or avoid damages. *See RIV VIL, Inc. v. Tucker*, 979 F. Supp. 645, 660 (N.D. Ill. 1997) (Bucklo, J.). By failing to raise any argument, Legacy has failed to create any issue of fact as to whether Microsystems's actions constituted such a failure to exercise a reasonable effort to avoid its damages.

The Court therefore enters summary judgment in Microsystems's favor on Legacy's affirmative defense of failure to mitigate damages.[2]

### D. Amount of Damages and Legacy's Claim of Offset

The Court turns next to the issue of damages. A district court may determine damages at summary judgment "[i]f all the material issues of fact underlying a claim, including the amount of damages, are established." *Bancorp Bank v. Metro. Diagnostic Imaging, Inc.*, No. 20 C 1841, 2023 WL 1800082, at *7 (N.D. Ill. Feb. 7, 2023) (Kocoras, J.) (quoting *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 795–96 (7th Cir. 2014)).

Microsystems asserts it is entitled to damages in the amount of the $207,491.89 principal balance due under the Goodwill Note as of the date of Legacy's last payment, plus interest at a rate of 2% annum. (Dkt. 21 at 5–6.) Microsystems calculates that interest as $8,288.68 as of September 9, 2021, (or $4,149.84 accruing each year in September 2020 and September 2021) for a total of $215,791.57 due as of September 9, 2021, with an additional $11.36 in interest accruing each day thereafter. (*Id.* at 6.) Microsystems also seeks its costs and attorneys' fees in connection with its collection efforts. (*Id.* at 10.)

Legacy does not dispute that the outstanding principal balance amount due under the Goodwill Note is $207,491.89, or that the Goodwill Note provides that interest accrues at a rate of

---

[2] Again, based on the Court's resolution of this issue, it need not address Microsystems's additional argument that Legacy agreed to waive its defenses under the terms of the Goodwill Note.

2% per annum. (Dkt. 28 ¶¶ 7, 20.) Legacy does not address or dispute Microsystems's specific interest calculation in its response and does not dispute that the Goodwill Note provides that "[i]f any suit or action is instituted, or attorneys are employed to collect this Note or any part hereof, [Legacy] promises and agrees to pay all costs of collection, including reasonable attorneys' fees and court costs." (*Id.* ¶ 12.)

Legacy's only argument with respect to the amount of damages is that there is a triable issue of fact as to whether it made an overpayment on the sale of Legend Micro which would reduce any amount that Legacy owes.³ In particular, Legacy contends that it made a mistaken overpayment on the separate Inventory Note in the amount of $20,851.08, which it calculated by taking the total amount it paid on the Inventory Note, $276,039.16, and subtracting the principal sum of the Inventory Note of $255,188.08. (*Id.* ¶ 40.) Legacy suggests that its alleged overpayment on the Inventory Note precludes summary judgment on the issue of damages.

Microsystems argues that Legacy's claim of overpayment has no legal or factual basis. Microsystems maintains that, under Illinois law, any claim for a setoff or recoupment based on an overpayment on a contract must be pled as a counterclaim, which Legacy failed to do. (Dkt. 21 at 9.)

The Court agrees with Microsystems that Legacy cannot seek to offset its damages under the Goodwill Note based on any alleged overpayment on the Inventory Note. First, Microsystems is correct that "Illinois law 'requires a defendant's claim in the nature of set-off or recoupment to be pleaded as a counterclaim,'" which legacy has not brought. *See Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064, 1068 (7th Cir. 1987). Second, even if Legacy had properly pled a claim for set-off or recoupment based on its overpayment on the Inventory Note, that would not preclude summary judgment for Microsystems on its damages for Legacy's breach of the Goodwill Note. In Illinois,

---

³ Legacy suggests in passing that its unclean hands defense should bar Microsystems's recovery of interest and attorneys' fees. As that defense fails as a matter of law, it is not a basis to eliminate or reduce Microsystems's right to recovery under the Goodwill Note.

13

"only claims that relate directly to the contracts being sued upon may be used for setoff." *Bank of Am., N.A. v. Trinity Lighting, Inc.*, No. 10 C 2250, 2011 WL 589679, at *2 (N.D. Ill. Feb. 10, 2011) (Zagel, J.) (citations omitted). Microsystems is only suing to collect under the Goodwill Note, and the Inventory Note is a separate and distinct agreement. Further, Legacy provides no basis or support for its contention that its alleged overpayment on the Inventory Note is grounds to preclude summary judgment in Microsystems's favor on its damages under the separate Goodwill Note.

Given that Legacy cannot claim any offset on its damages, and that the material issues of fact underlying the amount of damages are undisputed, summary judgment in Microsystems's favor on the issue of damages is appropriate. Microsystems is therefore entitled to damages in the amount of $207,491.89, reflecting the principal amount due on the Goodwill Note as of September 9, 2020, plus an award of 2% interest per annum thereafter. Microsystems is additionally entitled to its attorneys' fees and costs associated with seeking to collect on the Goodwill note but the Court leaves it to the parties to confer and move for a briefing schedule.

**CONCLUSION**

For the foregoing reasons, the Court enters summary judgment [20] in Microsystems's favor on its breach of contract claim. Microsystems is entitled to damages in the amount of $207,491.89, reflecting the principal amount due on the Goodwill Note as of September 9, 2020, plus an award of 2% per annum thereafter. If Microsystems is insistent on attorneys' fees and costs, the Court will set briefing schedule if needed. Microsystems's alternative claim for quantum meruit is dismissed.

**IT IS SO ORDERED.**

ENTERED:_____

DATE: 9/30/2024

Sharon Johnson Coleman
United States District Court Judge

14